IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23–cv–00943–SKC–MDB

MARJORIE BELL, as parent and legal guardian of M.A., a minor,

Plaintiff,

v.

CITADEL MALL REALTY LLC,
MASON ASSET MANAGEMENT, INC.,
NAMDAR CAPITAL GROUP, LLC,
NAMDAR REALTY GROUP, LLC,
CITADEL CH LLC,
CITADEL NASSIM LLC,
IGAL NAMDAR,
NAMCO REALTY LLC, and
NAMCO REALTY LTD.,

Defendants.

---

**ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Magistrate Judge Maritza Dominguez Braswell**

This matter is before the Court on Plaintiff's Motion for Sanctions. (["Motion"], Doc. No. 146.) Defendants responded in opposition, (["Response"], Doc. No. 154), and Plaintiff replied (["Reply"], Doc. No. 159). On May 7, 2026, the Court conducted an evidentiary hearing on the Motion. After careful review of the briefs, arguments, and relevant law, the Court **ORDERS** monetary sanctions and respectfully **RECOMMENDS** additional sanctions, to be determined by the presiding judge.

**BACKGROUND**

This case arises out of a May 22, 2022, shooting at the Citadel Mall in Colorado Springs (the "Mall"). Discovery has been open since June 6, 2023. (Doc. No. 22.) The Court has resolved

many discovery disputes, held multiple conferences, and entered several discovery orders. (*See* Doc. Nos. 63, 64, 68, 71, 81, 90, 92, 116, 132, 166.) At one point, the Court authorized Plaintiff to file a motion to compel. (Doc. Nos. 116, 120.) The Court's order on that motion set forth detailed discovery orders. (["February 3, 2026 Order"], Doc. No. 133.)

Pursuant to the February 3, 2026 Order, Defendants[1] made certain productions, which in some respects were incomplete, and in others revealed that Defendants had been withholding relevant and responsive documents for quite some time.

Plaintiff now moves to sanction Defendants under Fed. R. Civ. P. 37(b)(2), for abusing the judicial process and violating the February 3, 2026 Order. (Doc. No. 146 at 14-19.) Specifically, Plaintiff seeks to strike the answers of Defendants Citadel Mall Realty, Namdar Realty, and Igal Namdar—in effect, requesting default against these parties. (*Id.* at 16-19.) Plaintiff seeks lesser sanctions for Defendants Nassim, Mason, Citadel CH, and Namdar Capital. (*Id.* at 20.)

Defendants deny many of the accusations and argue they have not violated any discovery order. (Doc. No. 154.)

## LEGAL STANDARD

### I. Fed. R. Civ. P. 37

Pursuant to Fed. R. Civ. P. 37(b)(2), when a party's officer, director, managing agent, or designated witness "fails to obey an order to provide or permit discovery," courts may impose a broad range of sanctions including directing that certain facts be taken as established, prohibiting

[1] New defendants have been added to this case since the Motion was filed. The Motion applies only to Defendants Citadel Mall Realty LLC ("Citadel Mall Realty"), Mason Asset Management, Inc. ("Mason"), Namdar Capital Group, LLC ("Namdar Capital"), Namdar Realty Group, LLC ("Namdar Realty"), Citadel CH, LLC ("Citadel CH"), Citadel Nassim LLC ("Nassim"), and Igal Namdar ("Mr. Namdar"). As used in this Order, "Defendants" refers to these defendants only.

certain claims, defenses, or evidence, striking pleadings, and entering default. Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). Moreover, a court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Courts have broad discretion to craft sanctions under Rule 37(b)(2), so long as the chosen sanctions are "'just' and 'related to the particular claim which was at issue in the order to provide discovery.'" *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992) (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 695, 707 (1982) (internal quotations omitted)). When choosing whether to impose dispositive sanctions, courts are guided by the *Ehrenhaus* factors: (1) the degree of actual prejudice to the opposing party; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions. *Id.* at 921; *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1323 (10th Cir. 2011) (the *Ehrenhaus* factors are guideposts, not a rigid test). "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." *EBI Sec. Corp. v. Net Command Tech, Inc.*, 85 F. App'x 105, 108 (10th Cir. 2003).

Moreover, dispositive sanctions should be predicated upon a finding of "willfulness" or "bad faith, or some fault" of a party, rather than a mere "inability to comply" with court orders. *Archibeque v. Atchison, Topeka & Santa Fe Ry.*, 70 F.3d 1172, 1174 (10th Cir. 1995). Willfulness is "any intentional failure as distinguished from involuntary noncompliance. No wrongful intent need be shown." *MacAlmon Music, LLC v. Maurice Sklar Ministries, Inc.*, 2015

WL 794328, at *10 (D. Colo. Feb. 4, 2015), *R. & R. adopted*, 2015 WL 782722 (D. Colo. Feb. 24, 2015) (quoting *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir. 1987)). Likewise, adverse inferences require a finding of bad faith. *See Equal Emp. Opportunity Comm'n v. JetStream Ground Servs., Inc.*, 878 F.3d 960, 964-66 (10th Cir. 2017) (explaining that adverse inference sanctions are predicated upon bad faith by the offending party).

## ANALYSIS

Plaintiff alleges that Defendants delayed the production of responsive information, violated Court orders, and that Mr. Namdar was obstructive in discovery. (Doc. No. 146 at 1-2; 5-9.) The Court considers each allegation in turn.

### I. Delayed Productions

Key among Plaintiff's allegations is that Citadel Mall Realty, Namdar Realty, and Igal Namdar failed to timely disclose: (1) emails related to Mall security, and (2) a written management agreement for the Mall. (Doc. No. 146 at 3-8.)

***Security Emails***

Plaintiff served its first round of interrogatories and requests for production on Citadel Mall Realty in September 2023, (Doc. No. 146 at 2), and on Namdar Realty in August 2024. (Doc. Nos. 146-1, 146-2, 146-3, 146-4.) In these requests, Plaintiff asked these Defendants to "identify each and every incident of alleged criminal activity of any kind that Defendant has knowledge of having occurred on the Subject Property from May 22, 2018, through present." (Doc. No. 146-1 at 6; Doc. No. 146-3 at 9.) In response, Citadel Mall Realty objected to the breadth of the question and produced only reports stemming from the shooting incident in this case. (Doc. No. 146-1 at 6.) Namdar Realty echoed Citadel Mall Realty's objection, disclaimed any knowledge of criminal activity at the Mall, and stressed that it "would only be privy to such

information if reported to Namdar [Realty] by employees of The Citadel Mall." (Doc. No. 146-3 at 9.)

Plaintiff also requested correspondence related to Mall security. From Citadel Mall Realty, Plaintiff requested "[a]ll documents or correspondence that evidence, relate to, or set forth any request by any tenant or patron of the Subject Property for the placement of security or security features in any area of the Subject Property or parking lot." (Doc. No. 146-2 at 14.) From Namdar Realty, Plaintiff requested "[a]ll documents, including electronic communications, generated or received by Defendant discussing, concerning or pertaining to the provision of security personnel or security features for the Subject Property from May 22, 2018, through present." (Doc. No. 146-4 at 5.) Defendants responded that they were "not in possession, control or custody of any documents responsive to this request." (*Id.*; Doc. No. 146-2 at 14.)

Discovery stalled, the Court intervened, and eventually, the parties agreed on a protocol for the discovery of electronically stored information, which the Court entered as an order. (["ESI Protocol"], Doc. No. 70; *see also* Doc. No. 63 (the Court providing guidance on the ESI Protocol); Doc. Nos. 68 (the Court resolving disputes regarding the protocol).) On October 7, 2024, over a year after Citadel Mall Realty first received a request for the subject information, Defendants produced two emails respectively dated April 13 and 28, 2022. (Doc. No. 146-8) (the "Security Emails"). The Security Emails are addressed to Mr. Namdar and originate from a person identifying as the Director of Operations for Namdar Realty. (*Id.*) The first email asks Mr. Namdar to approve the budget to hire a security guard at the Mall due to an "extreme uptick" in crime, including a recent "shooting that left 2 dead" in the parking lot of the Mall. (*Id.* at 1.) The second email restates the request for Mr. Namdar to approve the budget. (*Id.* at 2.) These emails were delivered to Mr. Namdar approximately one month before the subject shooting incident,

request increased security, and clearly notify Mr. Namdar of an "extreme uptick" in crime. There is no question the Security Emails are relevant, responsive, and in the possession, custody, or control of various Defendants, including Citadel Mall Realty and Namdar Realty, both of which are connected to—and in some respects, act through—Mr. Namdar.[2] Nevertheless, it took over a year, Court intervention, and the ESI Protocol for Defendants to produce them.

***Management Agreement***

Also in September 2023, Plaintiff asked Citadel Mall Realty and Namdar Realty to produce "any and all written agreements between Defendant and any other party to this litigation or non-party which pertained to any aspect of the operations at the Subject Property, including but not limited to [. . . .] property management services [. . . .] during the time period of May 22, 2022, through Present." (Doc. No. 146-2 at 5; Doc. No. 146-4 at 4.) In response, these Defendants stated they were "not in possession, custody, or control of any documents responsive to this request." (Doc. No. 146-2 at 5; Doc. No. 146-4 at 4.) Plaintiff later made the same request to Mr. Namdar, who responded on August 29, 2025, with general objections and a statement that "only Citadel Mall Realty has a managerial role or function regarding the Subject Property." (Doc. No. 146-6 at 4.)

At a discovery hearing on September 15, 2025, the Court admonished Defendants for their evasive responses and ordered Mr. Namdar to "supplement [his] responses to

---

[2] Mr. Namdar disclaims responsibility over the entity Defendants. (*See* Doc. No. 146 at 5.) But Mr. Namdar admits that he owns, manages, or profits from these Defendants. For example, Mr. Namdar admits ownership interest Namdar Realty Group, Namco Realty, LLC, and Namco Realty, Ltd. (Transcript of May 7, 2026 Motion Hearing ["Hearing Tr."], Doc. No. 171, at 56:10-25; *see also id.* at 64:5-11 (the Mall is owned by Mr. Namdar's entities and Mr. Namdar's family members).) Mr. Namdar also signed a management agreement on behalf of Citadel Mall Realty. *See infra* at 7 n.3. Furthermore, all Defendants are represented by the same counsel and submitted joint discovery responses. (*See* Doc. No. 146 at 2.)

interrogatories and production requests by 8:00 a.m. on September 17, 2025." (Doc. No. 92 at 1.) The remaining Defendants were ordered to supplement their discovery responses by October 3, 2025. (*Id.* at 2.) But it was not until January 12, 2026, in Defendants' Eighth Supplemental Disclosures—more than two years after Plaintiff's request—that Defendants finally produced a December 24, 2015, service agreement for the management of the Mall (the "Management Agreement"). (Doc. No. 146-5; Doc. No. 146 at 4).[3]

***Withholding This Information Was Not Substantially Justified***

In their Response, Defendants offer no justification for their late disclosures, (*see* Doc. No. 154), arguably waiving the opportunity to defend their actions. *See Gocha v. Nat'l R.R. Passenger Corp.*, 75 F. Supp. 3d 1304, 1313 (D. Colo. 2014) (deeming arguments raised for the first time at oral argument, waived). Still, the Court gave Defendants an opportunity to explain themselves during the May 7, 2026, hearing. (Hearing Tr., Doc. No. 171, at 36:21-37:7.) There, Defendants argued (somewhat halfheartedly) that their delays were attributable to mistake. But they could not explain what mistake caused the delay, nor could they explain how it was possible to miss the Management Agreement and the Security Emails in the face of multiple conferrals, conferences, and a detailed protocol. (*Id.* at 40:16-24 (giving no reason for late disclosure of emails); 41:9-42:1 (giving no reason for Defendants' failure to find and disclose the Management Agreement despite multiple discovery conferences and an ESI protocol).)

---

[3] The agreement demonstrates that Citadel Mall Realty employed another entity, Namco Realty LLC, as the "sole and exclusive manager" of the Mall. (Doc. No. 146-5 at 1.) The production of the agreement resulted in the addition of Namco Realty LLC as a Defendant. (*See* Doc. No. 155.) Mr. Namdar signed the agreement on behalf of Citadel Mall Realty, Namco Realty LLC, and Namco Realty Ltd., signaling his involvement with these entities, and with the management of the Mall. (Doc. No. 146-5 at 5.)

In sum, the withholding of this information constitutes a violation of at least two Court Orders (the ESI Protocol and the Court's September 15, 2025, Order), and it was not substantially justified.

**II. Violation of February 3, 2026 Order**

The Court ordered fulsome discovery through two Scheduling Orders, and as noted above, the ESI Protocol. (Doc. Nos. 33, 64, 70.) After those orders, the Court admonished Defendants for their approach to discovery. (Doc. No. 71 at 1 (the Court asking Defendants to explain their failure to comply with the ESI protocol and cautioning against further non-compliance).) The parties continued to raise disputes with the Court, and eventually, the Court was forced to admonish Defendants again because their responses were evasive and required supplementation. (*See* Doc. No. 92.) Still, Defendants' resistance to discovery continued. (*See, e.g.*, Doc. No. 116 at 1 (the Court expressing concern about Defendants' evasive discovery practices).) The Court was once again forced to expend time and resources poring over the disputes.

In its February 3, 2026 Order, the Court set out 23 categories of disclosures that Defendants were required to make. (Doc. No. 133.) Plaintiff claims that Defendants violated 13 of those 23 Court directives. (*See* Doc. No. 146 at 10-13.) After carefully reviewing the parties' position statements on this matter, and after questioning Defendants during the hearing on May 7, 2026, the Court concludes that Defendants were either noncompliant with several of the Court's directives or mischaracterized the Court's directives just enough to appear compliant.

For example, in Paragraph 1, the Court ordered Defendants to identify "*all persons* who to their knowledge, information or belief *possess any knowledge* concerning the incident alleged in the Complaint." (Doc. No. 133 at 4) (emphasis added). Yet, Defendants claim this only

requires them to disclose persons who provided information in response to Plaintiff's interrogatories. (*See* Doc. No. 154 at 3 ("Defendants understood this [Order] to be in response to Plaintiff's complaint that Defendants did not properly identify person(s) providing the information utilized in responding to Plaintiff's Interrogatories.")) This is an unreasonable reading and an improper narrowing of the Court's directive.

In Paragraph 15, the Court ordered Namdar Realty to "identify by name and state of incorporation *all business entities owned by, managed by, or created at the direction of* Defendant Namdar RG or its members/managers/owners, or in which Defendant Namdar RG holds any interest, *in any way related to the ownership or operation of shopping malls* and/or retail shopping centers in the United States." (Doc. No. 133 at 8) (emphasis added). Defendants, however, identified only the *shopping centers* controlled by Namdar Realty. Plaintiff rightly points out that the broad language in the Court's Order was designed to shed light on the management structures that Defendants use, not merely secure a list of shopping malls. (Doc. No. 146 at 12, 18.) Rather than address this argument, Defendants appear to feign ignorance, claiming they do not understand Plaintiff's objection. (*See* Doc. No. 154 at 14.)

In Paragraph 23, the Court ordered Defendant Mason to explain how it derives economic gain from the Mall and provide "the identity of the entity that compensates Defendant Mason AM for services at Citadel Mall." (Doc. No. 133 at 9.) Defendant Mason did not identify the compensating entity, yet submitted a Certificate of Compliance on March 3, 2026, claiming it complied with Paragraph 23. (Doc. No. 140.) Rather than acknowledge the insufficiency of the original disclosure, Defendant Mason does what Defendants have done time and time again in this litigation: act as though the withholding of certain information was a simple, isolated, and inconsequential oversight. (Doc. No. 154 at 15.) Under a different set of circumstances, an

omission like this may very well be innocent and ultimately inconsequential. But here—against the backdrop of aggressive discovery positions, the withholding of documents, and generally obstructive behavior during discovery— the alleged mistake appears to be anything but innocent.

**III. Mr. Namdar's Conduct During Discovery**

During the status conference on September 15, 2025, Plaintiff presented credible evidence that Mr. Namdar's approach to discovery had become meaningfully evasive. (Doc. No. 92.) The Court therefore ordered an extended deposition of Mr. Namdar and warned that evasive answers could subject him to sanctions. (*Id.*) Yet three days later, during his deposition, Mr. Namdar was evasive and claimed ignorance on the most basic topics. (*See*, *e.g.*, Transcript of September 18, 2025 Deposition of Igal Namdar ["Depo. Tr."][4] at 86:18-89:23 (Mr. Namdar stating he did not remember preparing or signing discovery responses submitted less than a week earlier); *id.* at 89:8-25, 90:1-22 (Mr. Namdar stating he did not remember the Security Emails and did not review his emails before deposition); *id.* at 101:17-22 (Mr. Namdar unable to state his title with Namdar Realty Group); *id.* at 103:14-16 (Mr. Namdar unable to name any board members of Namco Realty).

Mr. Namdar fared no better during the May 7, 2026, court hearing. Initially, Mr. Namdar testified that he did not personally review or prepare his written discovery responses. (Hearing Tr., Doc. No. 171, at 61:9-62:10 ("The Court: Did you help prepare discovery responses in this case? Mr. Namdar: I think my lawyer did. I wasn't involved in this [. . . .]"; *see also id.* at 76:21-77:2 (Mr. Namdar's in-house attorney prepared his discovery responses, which Mr. Namdar "personally did not read through").) But later, after the Court expressed concern over his failure

[4] Plaintiff attaches only certain excerpts of the deposition, (Doc. No. 146-7), but the Court cites others. Plaintiff is directed to file the full transcript within seven days of this Order & Recommendation. *See infra* at 17.

to confirm the truthfulness of his responses, Mr. Namdar changed his tune. He said he did not know or remember if he reviewed his discovery responses. (*Id.* at 77:14-17 ("The Court: So you did not read your answers before you signed and said these are all accurate? Mr. Namdar: I don't – I don't remember. I don't know for sure. I don't want to say yes or no.").)

Mr. Namdar also claimed he could not "read more than one or two sentences" or "go through [written] details" for himself or his businesses. (*Id.* at 60:6.) Yet he lauded his own business acumen and sophistication, claiming a portfolio of nearly 100 malls and an ability to perform complex calculations. (*Id.* at 65:6-22 (Mr. Namdar saying he is "blessed with numbers" and can do the financial analysis of ten people "on a piece of paper"); *see also id.* at 60:22-61:3 (Mr. Namdar saying he "bet to buy malls when nobody wanted to buy malls" and has built a portfolio of "75 to 90 malls, along with different assets").)

Mr. Namdar also testified that the primary day-to-day management of these malls occurred through Namdar Realty, which Mr. Namdar testified has about 75 employees. (*Id.* at 68:8-19.) And he disclaimed any personal involvement in, or knowledge of, the management. (*Id.* at 65:23 (Mr. Namdar: "I'm not involved in day-to-day management.").) But Mr. Namdar admitted that he approves lease agreements, makes executive staffing decisions, and resolves major concerns. (*Id.* at 64:18-65:24.) Moreover, the Security Emails were addressed to Mr. Namdar and suggest that he was personally responsible for approving staffing and security decisions at the Mall.

What was most difficult to believe was that Mr. Namdar could not answer basic questions about himself or his businesses. For example, Mr. Namdar could not recall his exact title with Namdar Realty. (*Id.* at 58:19-59:8 (Mr. Namdar saying: "I own the company. I don't know if [I'm] a CEO [. . . .] I'm assuming – I'm the owner of the company, whether that's the CEO."))

Nor could he name any of the individuals on the board of directors for Namco Realty. (*Id.* at 56:24-57:12.) This, even after being asked those questions twice: once in deposition, and a second time in court—after having plenty of time to research these basic details.

Rarely does the Court find a person entirely not credible; there is always some truth to every story. But here, the Court found it difficult to believe anything Mr. Namdar was saying. His inconsistent answers, claimed ignorance of basic details, shifting posture, contrived emotions, and sharp recall of only self-serving details, gave him away every time. He appeared to be performing for the room rather than answering questions. Counsel compounded the problem with half-explanations and dismissive responses. And while the Court chalks this up to inexperience and/or the discomfort of managing an obstructive client, it does not change the fact that counsel could have handled the hearing—and discovery in general—far better.[5]

## IV. Appropriate Sanctions

Plaintiff requests entry of default against Mr. Namdar, Namdar Realty, and Citadel Mall Realty. To determine if default is appropriate here, the Court is guided by the *Ehrenhaus* factors.

### A. Prejudice to Plaintiff

Plaintiff has expended significant time, energy, and resources to obtain basic information. Moreover, Defendants' withholding of plainly responsive documents during discovery—some for over two years—robbed Plaintiff of the ability to decide case strategy based on key communications. Defendants' muddling of the Mall's management structure impacted Plaintiff's ability to identify the right defendants from the outset, requiring Plaintiff to pivot late in the

[5] The Court is referring to prior counsel, who has since withdrawn. Nothing in this Order implicates Defendants' current attorneys, who by all accounts appear to be working diligently to cure deficiencies.

litigation and file an amended complaint. The piecemeal production and gamesmanship meaningfully hindered Plaintiff's case.

**B. Interference with the Judicial Process**

The first Scheduling Order in this case was entered on July 13, 2023. (Doc. No. 33.) But the Court was forced to hold at least seven discovery-related hearings to keep the parties on track: October 2, 2024 (Doc. No. 68), November 13, 2024 (Doc. No. 71), March 31, 2025 (Doc. No. 81), August 18, 2025 (Doc. No. 90), November 17, 2025 (Doc. No. 116), January 26, 2026 (Doc. No. 132), and April 29, 2026 (Doc. No. 166.) Moreover, it had to oversee the ESI Protocol, amend the schedule several times, issue written orders on disputes, and admonish Defendants multiple times. (*See, e.g.*, Doc. Nos. 63, 64, 70, 71, 92, 167.) In other words, the Court has expended significant resources on this case, and for almost every dispute, Defendants were the primary source of the problem. (*See*, *e.g.*, Doc. No. 116 at 1 (while Plaintiff's approach to discovery is overbroad in some respects, the Court is concerned about Defendants' evasive approach to discovery); Doc. No. 133 at 4 (discovery has been "protracted and unusually contentious [. . . .] due in large part" to Defendants).)

**C. Culpability of the Parties**

Defendants cast their delays and noncompliance as honest mistakes. But at some point, mistakes pile too high to be honest. Moreover, and as noted above, Mr. Namdar has been evasive, his explanations are not credible, and he seems to have very little respect for Court orders. This is not mistake. It is defiance and calculated obstruction.

In *Alexander v. Archuleta Cnty., Colo.*, the Honorable Kristen L. Mix found bad faith and willful error when a party continuously delayed productions, violated discovery rules, and failed to comply with court orders. 2010 WL 363390, at *3 (D. Colo. Jan. 27, 2010). As further

evidence of bad faith, the offending party in *Alexander* only provided certain responses after the party seeking discovery filed motions to compel. (*Id.*) Similarly, here, Defendants' delays, evasive conduct, and noncompliance, even in the face of Court orders, demonstrate bad faith and willful error.

Citadel Mall Realty, Namdar Realty, and Mr. Namdar have engaged in particularly egregious conduct. However, given that all Defendants share the same counsel, jointly participated in discovery, and certified their compliance with discovery orders, the Court finds that all Defendants (save for Namco Realty LLC and Namco Realty Ltd.) are culpable.

**D. Advance Warning**

Courts typically consider whether a warning was issued in advance. *See Ehrenhaus*, 965 F.2d at 920-21 (advance warning is one factor to consider); *Archibeque*, 70 F.2d at 1175 (though courts should ordinarily consider whether parties were warned of imminent dismissal, it is not an abuse of discretion to enter a dispositive sanction without such warning). Here, Defendants were previously warned about the possibility of sanctions. (Doc. No. 92 (placing Defendants on notice that "evasive answers and excessive objections during deposition may subject Defendant Namdar to a second deposition and fee shifting").) However, there was no warning about dispositive sanctions.

**E. Efficacy of Lesser Sanctions**

The ultimate inquiry is whether the aggravating factors outweigh the judicial system's "strong predisposition to resolve cases on their merits" in a manner warranting default. *See Echon v. Sackett*, 2017 WL 746340, at *8 (D. Colo. Jan. 23, 2017), *R. & R. adopted*, 2017 WL 733376 (D. Colo. Feb. 24, 2017) (citing *EBI Sec. Corp.*, 85 Fed. App'x at 108). Here, Defendants' discovery violations and abuse of process have been meaningful. But this is not a

case where one side has outright refused to produce or participate. Defendants have made multiple productions spanning thousands of pages, produced witnesses for deposition, and made some effort to comply with the Court's orders. The Court is frustrated with Defendants' approach, but the aggravating factors do not outweigh the Court's preference for resolution on the merits. The Court will not recommend dispositive sanctions.

That, however, does not end the analysis. First, the Court "must" enter monetary sanctions against Defendants under Rule 37(b)(2)(C) because Defendants lacked substantial justification for their discovery violations, and no other circumstances make an award of attorney fees unjust. Moreover, repeated discovery violations which "improperly prevented [the moving party] from preparing its [case]," warrant "serious sanctions" beyond fees. *Fann v. Hartford Underwriters Ins. Co.,* 2013 WL 1858462, at *14-15 (D. Colo. Apr. 16, 2013), *R. & R. adopted*, 2013 WL 3927664 (D. Colo. July 30, 2013) (prohibiting offending party from supporting certain claims at trial due to willfully delayed productions).

Here, Defendants' obstruction, deceit, bad faith, and repeated discovery abuses warrant more than monetary sanctions. But the Court will not craft those additional sanctions now. The presiding judge will see the evidence, hear from witnesses, and be in the best position to fashion the appropriate sanctions at a later date. *See generally Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1172 (D. Colo. 2015) (where magistrate judge found spoliation and imposed monetary sanctions, but declined to fashion further sanctions because the presiding judge would be in a better position to craft appropriate sanctions after admitting evidence, assessing credibility, and making other findings at trial); *see also Peddada v. Cath. Health Initiatives Colorado*, 2026 WL 35172, at *6 (D. Colo. Jan. 6, 2026) (where this Court abstained from crafting sanctions beyond fees and costs because the presiding judge was in the best position to

do the same). Accordingly, the Court will only address monetary sanctions at this time, and recommend that the presiding judge craft additional sanctions, later.

## CONCLUSION

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the presiding judge issue sanctions in the form of evidence preclusion, adverse inference(s), and/or other non-monetary sanctions, to be determined ahead of, during, or after trial, as he sees fit.

Additionally, the Court **ORDERS** the following:

1) The Motion for Sanctions, Doc. No. 146, is **GRANTED IN PART.**
2) Defendants shall pay the reasonable fees and costs associated with Defendants' obstruction, bad faith, delay, and improper withholding of responsive information. This may include, for example, the fees associated with Plaintiff counsel's participation in unnecessary conferrals, hearings, discovery disputes, and motions practice. All Defendants—except Namco Realty LLC and Namco Realty Ltd.—are jointly and severally responsible.[6]
    a. Within thirty (30) days of this Order & Recommendation, Plaintiff shall submit an affidavit, with supporting information attached, stating the total amount of fees and costs recoverable under this Order & Recommendation.
    b. Within fifteen (15) days thereafter, Defendants may submit a response of no more than five (5) pages setting forth their challenges, if any, to the total fees and costs. Any such challenge must concern only the reasonableness of the fees and costs, or the scope of fees and costs (as compared to what is permitted under this Order & Recommendation). Defendants may not, however, seek to relitigate the issues already resolved herein.
    c. Within ten (10) days after Defendants submit their response, Plaintiff may submit a reply of no more than five (5) pages.
3) To aid the presiding judge in determining the appropriate non-monetary sanctions, the parties are directed to include position statements in their Proposed Final Pretrial

[6] It is this Court's view that Defendants and their former counsel (not including Namco Realty LLC, Namco Realty Ltd. or recently entered counsel) bear some responsibility. However, because the parties—and in particular, Mr. Namdar—bear primary responsibility, this Order is directed only at Defendants themselves, not their counsel.

Order. Specifically, Plaintiff shall describe precisely the adverse inference(s), exclusion of evidence, and/or other sanction(s) she proposes, and she shall provide that draft statement to Defendants so they may include a responsive statement. These position statements shall be included in the "Special Issues" section of the Proposed Final Pretrial Order, and shall span no more than three (3) pages each. The statements may be 1.5 spaced if necessary.

4) Within seven (7) days of this Order & Recommendation, Plaintiff is directed to file a complete transcript of the September 18, 2025, deposition of Igal Namdar.

5) All parties, and in particular Mr. Namdar, are on notice that further evasive conduct or willful violations of court orders may result in additional sanctions up to and including a recommendation that pleadings be stricken, or default judgment be entered in Plaintiff's favor.

Dated this 21st of August, 2026.

**BY THE COURT:**

Maritza Dominguez Braswell
United States Magistrate Judge